Debra K. BALDWIN f/k/a Debra K. Henry, Appellant,

v.

The CITY OF WATERLOO, John R. Rooff, Jr., and Raymond White, Appellees.

No. 84–1470.

Supreme Court of Iowa.

July 31, 1985.

Paul T. Shinkle of Gottschalk, Shinkle & Long, Cedar Falls, for appellant.

David J. Dutton, Waterloo, for appellee City of Waterloo.

John T. McCoy, Waterloo, for appellee John R. Rooff, Jr.

Frederick G. White, Waterloo, for appellee Raymond White.

Robert W. Thompson, Reinbeck, and James E. Walsh, Jr. of Clark, Butler, Walsh & McGivern, Waterloo, for amicus curiae Estate of James L. Plaehn.

LARSON, Justice.

These interlocutory appeals present three issues: (1) whether a cross-petition against this estate is a "claim" required by Iowa Code section 633.410 to be filed within six months and, if so, whether "peculiar circumstances" existed so as to excuse a late filing; (2) whether Iowa Code section 668.4, limiting joint and several liability in certain circumstances, applied in this case; and (3) whether the alleged negligence of unidentified tortfeasors, nonparties in this action, could be considered in assessing the percentage of fault to respective parties. We conclude that the cross-petition was a "claim" under section 633.410, but "peculiar circumstances" excused the late filing. We also conclude that Iowa Code section 668.4 applies, but the negligence of unidentified parties may not be considered in assessing liability under it.

On May 5, 1978, a motorcycle operated by James L. Plaehn, on which the plaintiff Baldwin was a passenger, collided with a thirty-foot pole, "similar to" a utility pole, lying crossways on a street in Waterloo, Iowa. Just prior to the accident, according to police reports, the pole had been lying on the "parking area" between the sidewalk and curb, adjacent to the property owned

by defendant Rooff and leased by defendant White.

After the accident, Baldwin and Plaehn, the driver, filed a petition alleging that defendants city of Waterloo, Rooff and White were negligent in allowing the pole to be placed in the street. The defendants countered that they did not place the pole in the street and that they could not have foreseen that it would end up there. They also alleged that Baldwin and Plaehn had been drinking and that Plaehn had operated his vehicle in a negligent manner.

In July of 1980, defendant Rooff filed a motion to compel discovery, claiming that Plaehn had failed to respond to discovery requests. The trial court ordered him to respond. On January 4, 1981, Plaehn died in an unrelated automobile accident, and his estate was substituted as a plaintiff. The discovery request remained unanswered.

Defendant Rooff moved to dismiss the estate's suit because of its continued failure to respond to the discovery order. The trial court sustained the motion. In addition, claims of the estate of Plaehn against all of the other defendants were dismissed, on January 1, 1982, under Iowa Rule of Civil Procedure 215.1.

On June 25, 1984, defendants Rooff and White attempted to bring the Plaehn estate back into the suit by filing a motion for leave of court to file a third-party petition against it. The defendants also sought to file a cross-petition against certain "unidentified vandals" who, they contended, actually placed the pole on the roadway. It is the defendants' attempts to bring in the estate, and the "unidentified vandals," which spawn the issues on appeal.

Defendant Rooff moved for an adjudication of law points, asserting that, even if the court would not allow formal joinder of the unidentified vandals, the liability of these parties should nonetheless be considered in assessing negligence. Baldwin resisted and requested a ruling that section 668.4 (barring joint and several liability where the defendant is less than fifty per-

cent negligent), is inapplicable in the present case.

The district court ruled: (1) That leave of court would be granted to file a third-party petition against the estate of James Plaehn, but not against the unidentified persons; (2) that Iowa Code section 668.4, relating to joint and several liability, applied; and (3) that the negligence of unidentified persons may not be considered in assigning the percentages of liability under section 668.4.

Following these rulings, both parties were granted leave to file interlocutory appeals.

### I.  *The Claim Against the Estate.*

These defendants attempted to bring in the estate of James Plaehn, as an additional defendant, in order to dilute their own percentage of negligence and thereby escape joint and several liability. *See* Iowa Code section 668.4 (1985) (eliminating joint and several liability as to any defendant found less than fifty percent negligent). They argue that the court's order allowing a claim against Plaehn's estate was proper for three reasons: (1) Iowa Rule of Civil Procedure 34 allows such a claim; (2) the applicable statute of limitations was not that of section 633.410 but the five-year statute of section 614.1(4), relating to "other actions"; and (3) even if the proper statute of limitations is section 633.410, "peculiar circumstances" existed, thus permitting a late filing. The estate of James Plaehn, as amicus curiae, and the plaintiff Baldwin, challenge the order granting the cross-petition against the estate.

A.  It is true, as defendants claim, that a motion to implead a third party after the ten-day period provided by the rules lies within the sound discretion of the district court. *See Atlas, Ltd. v. Kingman Warehouse Co.,* 357 N.W.2d 584, 587 (Iowa 1984).

No amount of trial court discretion, however, can reinstate a case once the limitation period of section 633.410 has expired, unless "peculiar circumstances" exist. Section 633.410, the probate claims statute

(often referred to as our "nonclaim" statute) provides:

*All* claims against a decedent's estate, other than charges, *whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract or otherwise,* shall be forever barred against the estate, the personal representative, and the distributees of the estate, unless filed with the clerk within six months after the date of the second publication of the notice to creditors; provided, however, that the personal representative may waive such limitation on filing; and this provision shall not bar claimants entitled to equitable relief due to peculiar circumstances.

(Emphasis added.)

(The claims period has now been reduced from six months to four, but this amendment does not affect this case. *See* 1984 Iowa Acts ch. 1080, § 9.)

■ It is obvious that this language is very broad, covering "[a]ll claims ... whether due or to become due, absolute or contingent, liquidated or unliquidated...." It has been suggested, based on a reading of *Nichols v. Harsh,* 202 Iowa 117, 209 N.W. 297 (1926), that the test for determining whether a contingent claim will be barred if not filed under section 633.410 is the practicality of requiring a timely filing. For example, if the decedent had been a grantor in a warranty deed, it would not be practical to require the filing of a contingent claim by every subsequent grantee on the basis that some day there might be liability. On the other hand, these practical problems do not exist to the same extent in a case where the decedent had guaranteed a note. There, the basis of liability, and the circumstances on which it is based, are readily foreseeable. *See* S. Kurtz & R. Reimer, *Iowa Estates: Taxation and Administration* § 13.13, at 441 (1975). We agree with this analysis of *Nichols* and apply that test here.

In this case, the cross-petitioners had been sued by Plaehn and Baldwin while Plaehn was still alive. They were therefore aware of Plaehn's involvement even before his estate was opened. If they had desired to spread the liability around, Plaehn (and later his estate) were obvious candidates. Under these circumstances, the need for filing a contingent claim was reasonably foreseeable. Based on these circumstances, and the broad language of section 633.410, we believe that this claim was one subject to the filing provisions of section 633.410, and the claim of cross-petitioners is barred by section 633.410 unless peculiar circumstances are established.

■ B. The district court ruled that "peculiar circumstances" existed so as to excuse the claimant's late filing. We first note the scope of our review. While section 633.410 says that "equitable" relief may be granted under peculiar circumstances, a proceeding in probate court to establish peculiar circumstances is at law, not equity. Therefore, our review is not de novo, and the district court's fact-finding will be affirmed if supported by substantial evidence. *See In re Estate of Northrup,* 230 N.W.2d 918, 921 (Iowa 1975); *In re Claim of Gwynne v. Vance,* 258 Iowa 875, 877, 140 N.W.2d 917, 918–19 (1966); *Rindfleisch v. Mundt Estate,* 247 Iowa 1124, 1128, 77 N.W.2d 643, 646 (1956).

■ In this case, however, there is no dispute about the facts. The parties agree that the reason for delayed filing of the cross-petition was the defendants' desire to take advantage of the newly-enacted statute modifying the rule of joint and several liability. *See* Iowa Code § 668.4. The issue is therefore not one of fact, but of law, and we are not bound by the district court's application of the law. *Wolder v. Rahm,* 249 N.W.2d 630, 632 (Iowa 1977); *Northrup,* 230 N.W.2d at 921; *Farmers Insurance Group v. Merryweather,* 214 N.W.2d 184, 186–87 (Iowa 1974).

We have held that a strong showing of peculiar circumstances is not necessary, especially when the estate is open and unsettled. In addition, the peculiar-circumstances exception should be liberally construed to effectuate justice. The burden of pleading and proving the exception is on the

person seeking equitable relief. *Northrup*, 230 N.W.2d at 921–22.

Our cases indicate that "peculiar circumstances" include fraud or concealment. *Groves v. Donohue*, 254 Iowa 412, 118 N.W.2d 65 (1962); *In re Sterner's Estate*, 224 Iowa 617, 278 N.W. 216 (1938); *Mullen v. Callanan*, 167 Iowa 367, 149 N.W. 516 (1914). Peculiar circumstances have also been found in cases where a promise has been made to pay without the filing of a claim, *e.g.*, *Cave v. Fahan*, 249 Iowa 1374, 92 N.W.2d 434 (1958); *Smallwood v. O'Bryan*, 208 Iowa 785, 225 N.W. 848 (1929), or where there is a similar course of conduct on the part of the debtor, *e.g.*, *Burroughs v. McLain*, 37 Iowa 189 (1873). *See generally* S. Kurtz & R. Reimer, *supra*, § 13.4, at 431.

On the other hand, we have not recognized peculiar circumstances where the delay is attributed to a mistake of law or lack of knowledge of the applicable law. *See, e.g., In re Will of McPheeters*, 233 Iowa 199, 8 N.W.2d 588 (1943) (fact that claimant was a nonresident and was improperly advised as to the period of time allowed in Iowa for filing a claim held insufficient as matter of law to constitute peculiar circumstances.); *In re Estate of Palmer*, 212 Iowa 21, 236 N.W. 58 (1931); *see also Roaf v. Knight*, 77 Iowa 506, 42 N.W. 433 (1889).

In this case, there is no claim that the estate misled the claimants or concealed information necessary to file a claim. In fact, as already noted, they were aware of the facts of the accident even before the estate was opened. The change in the law affecting joint and several liability during the pendency of this case was a circumstance which could not reasonably have been anticipated, regardless of the diligence of these claimants, because the previous law of joint and several liability seemed to be firmly entrenched. Was this the kind of peculiar circumstances envisioned by section 633.410?

Recently, our cases have shown less rigidity in resolving claims of peculiar circumstances, opting for a test of "good conscience and fair dealing" in preference to the rule of many earlier cases which gave little weight to those factors. We said in *Northrup* that

[p]eculiar circumstances entitling a claimant to equitable relief exist when "the delay between the period fixed by statute for filing claims be so excused and explained as that, when considered in connection with the claim asserted and the condition of the estate, good conscience and fair dealing demand that a hearing on the merits be afforded the claimant."

230 N.W.2d at 922, quoting *Ball v. James*, 176 Iowa 647, 659, 158 N.W. 684, 688 (1916). *See also Evjen v. Brooks*, 372 N.W.2d 494, 498 (Iowa 1985) (filed today).

■ The district court did not elaborate on the basis for finding peculiar circumstances. We believe, however, that, in addition to the change in the law of joint and several liability brought about by the enactment of chapter 668, the undisputed facts surrounding the claim establish that peculiar circumstances existed. These facts include the following: The Plaehn estate (and before it, Plaehn himself) had been actively involved in the same suit prior to its dismissal as to Plaehn; the extent of Plaehn's negligence had previously been put in issue by the claims of contributory negligence asserted by the defendants; and, perhaps most important, the Plaehn estate was still open and unsettled. If Plaehn's suit had not been dismissed, in fact, his negligence would have been weighed together with that of these defendants because the estate would have been a "party" under Iowa Code section 668.2 and 668.4 (which will be discussed later).

The only reason the Plaehn estate does not remain in the case, in which he was originally a plaintiff, is that it was dismissed as to him for his failure to provide discovery and failure to prosecute promptly under rule of civil procedure 215.1. The dismissal therefore resulted from a lack of diligence on the part of Plaehn (and his estate), and not on the part of the claimants. It would be anamolous, to say the least, to deny the claimants relief here on

the ground the dismissal relieved Plaehn's estate from the application of section 668.4.

Under the test of *Northrup*, we conclude that the district court properly allowed the late filing under the peculiar circumstance exception to section 633.410.

## II. *The Application of Section 668.4.*

Iowa Code section 668.4 provides:

In actions brought under this chapter, the rule of joint and several liability shall not apply to defendants who are found to bear less than fifty percent of the total fault assigned to all parties.

The issue is whether this section applies to this case, which was filed before July 4, 1984, the effective date of chapter 668. While the remainder of chapter 668 applies to all cases *filed* on or after July 1, 1984, section 668.4 specifically applies to all cases *tried* on or after July 1, 1984. *See* 1984 Iowa Acts Ch. 1293, § 15. The trial court ruled that section 668.4 therefore applied to this action. The effect of such ruling is to preclude the application of our rule of joint and several liability as to any of the named defendants who are found less than fifty percent negligent.

Plaintiff presents two arguments in attacking this ruling: (1) Other language contained in section 668.4 suggests that this section should, like the rest of chapter 668, apply only to cases *filed* after July 1, 1984; and (2) that the application of section 668.4 is a taking of a vested right, thus a violation of her substantive due process rights under both the United States and Iowa Constitutions.

A. "[T]he meaning of a statute is always a matter of law, and final construction and interpretation of Iowa statutory law is for this court." *Welp v. Iowa Department of Revenue*, 333 N.W.2d 481, 483 (Iowa 1983), quoting *Sorg v. Iowa Department of Revenue*, 269 N.W.2d 129, 131 (Iowa 1978). The intent of the legislature is the polestar in construing the statute. *Khort v. Yetter*, 344 N.W.2d 245, 246 (Iowa 1984). Ordinarily, the usual meaning of words are attached to statutory language in the absence of a manifest, contrary intent of the legislature. *See Welp*, 333 N.W.2d at 483.

■ The wording of this act could hardly be clearer. It says: "This Act, except for section 4, applies to all cases filed on or after July 1, 1984. Section 4 of this Act applies to all cases tried on or after July 1, 1984." 1984 Iowa Acts ch. 1293, § 15. We decline to attribute any other meaning to this provision in view of the clear language.

■ B. The question remains whether application of section 668.4 would be a violation of the plaintiff's substantive due process rights. It is well established that a statute is presumed to be prospective only unless expressly made retrospective. Iowa Code § 4.5. Statutes which specifically affect substantive rights are construed to operate prospectively unless legislative intent to the contrary clearly appears from the express language or by necessary and unavoidable implication. *See Matter of Chicago, Mil., St. P. & Pac. R.R.*, 334 N.W.2d 290, 293 (Iowa 1983). Conversely, if the statute relates solely to a remedy or procedure, it is ordinarily applied both prospectively and retrospectively. *State ex rel. Leas in Interest of O'Neil*, 303 N.W.2d 414, 419 (Iowa 1981).

We have previously discussed the distinctions between substantive and procedural law. Substantive law creates, defines and regulates rights. *State ex rel. Turner v. Limbrecht*, 246 N.W.2d 330, 332 (Iowa 1976). Procedural law, on the other hand, "is the practice, method, procedure, or legal machinery by which the substantive law is enforced or made effective." *Id.* at 332, quoting *Schmitt v. Jenkins Truck Lines, Inc.*, 260 Iowa 556, 560, 149 N.W.2d 789, 791 (1967). Finally, a remedial statute is one that intends to afford a private remedy to a person injured by a wrongful act. It is generally designed to correct an existing law or redress an existing grievance. *Id.* Noting that there is no constitutional prohibition against retrospective laws, we have said that

[i]n the absence of an express constitutional inhibition retrospective laws are

**492**

not prohibited as such. Moreover, the Constitution of the United States does not in terms prohibit the enactment by the states of retrospective laws which do not impair the obligation of contracts or partake of the character of ex post facto laws. Thus, prior to the enactment of the Fourteenth Amendment to the Federal Constitution, a retrospective law, unless falling within other constitutional inhibitions, could constitutionally operate to divest property rights. After the passage of the Fourteenth Amendment, however, the protection afforded by the due process clause was extended so as to prevent retrospective laws from divesting rights of property or vested rights generally. In many of the states there are constitutional provisions expressly prohibiting, not only the passage of any ex post facto law or law impairing the obligation of contracts, but any statute retrospective in its operation.

*State ex rel. Turner,* 246 N.W.2d at 334, quoting 73 Am.Jur.2d *Statutes* § 347, at 485–86 (1974).

Plaintiff had no vested right in a particular result of this litigation or in the continuation of the principle of unlimited joint and several liability. *See Schwarzkopf v. Sac County Board of Supervisors,* 341 N.W.2d 1, 8 (Iowa 1983). We have noted that

a right is not "vested" unless it is something more than a mere expectation, based on an anticipated continuance of the present laws. It must be some right or interest in property that has become fixed or established, and is not open to doubt or controversy.

*Id.* at 8, quoting from *Leach v. Commercial Savings Bank,* 205 Iowa 1154, 1165, 213 N.W. 517, 521 (1927). Any interest that these defendants might have in the continued state of the law concerning joint and several liability was not a "vested" right entitled to constitutional protection. We believe the trial court correctly ruled that section 668.1(4) is applicable in this case.

III. *The Unidentified Tortfeasors.*

The defendants filed a motion requesting that, in the event the trial court did not permit actual joinder of the unidentified parties, it nevertheless permit the jury to compare their negligence in assessing liability. The district court refused, and we think correctly so.

Defendants' argument relies heavily on *Goetzman v. Wichern,* 327 N.W.2d 742, 754 (Iowa 1982), in which we adopted the common-law doctrine of comparative negligence. We said the doctrine of comparative negligence "assigns responsibility for damages in proportion to a party's fault in proximately causing them." *Id.* at 752. Based upon this "fairness" standard, defendants submit we should allow the comparison of fault of absent tortfeasors.

In a case after *Goetzman,* however, we rejected a similar fairness argument raised in an attempt to modify the principle of joint and several liability. We noted that the scope of *Goetzman* was limited to the abrogation of contributory negligence only and was not intended to authorize the wholesale reallocation of fault in negligence cases. *See Rozevink v. Faris,* 342 N.W.2d 845, 849–50 (Iowa 1983).

Defendants point to cases from other jurisdictions which have approved comparison of the negligence of absent tortfeasors. *See, e.g., American Motorcycle Association v. Superior Court,* 20 Cal.3d 578, 578 P.2d 899, 906 at n. 2, 146 Cal.Rptr. 182, 189 n. 2 (1978); *Bofman v. Material Service Corp.,* 125 Ill.App.3d 1053, 81 Ill.Dec. 262, 267, 466 N.E.2d 1064, 1069 (1984); *Brown v. Keill,* 224 Kan. 195, 580 P.2d 867, 874 (1978); *Paul v. N.L. Industries, Inc.,* 624 P.2d 68, 69–70 (Okla.1980); *Bowman v. Barnes,* 282 S.E.2d 613, 621 (W.Va.1981); *Board of County Commissioners v. Ridenour,* 623 P.2d 1174, 1191 (Wyo.1981).

■ Section 668.4, however, adopts a more restrictive scope of "parties" whose negligence may be considered. Iowa Code section 668.2 provides this definition of a "party":

*Party defined.*

As used in this chapter, unless otherwise required, "party" means any of the following:

1. A claimant.

2. A person named as defendant.

3. A person who has been released pursuant to section 668.7.

4. A third-party defendant.

It is apparent that unidentified persons are not "parties" for purposes of applying the new joint and several liability statute.

■ But does section 668.2 apply to a case, such as this, which is filed *before* July 1, 1984, the effective date of the act? The act says section 668.4 will apply to such cases, if tried after that date; but it also says section 668.4 is the only portion of the act to be given such retroactive effect. We believe that, despite this language, section 668.2, as well as section 668.4, is applicable to issues of joint and severable liability in all cases tried after July 1, 1984. By making section 668.4 retrospective, it necessarily made the definition provision, 668.2, retrospective as well. To hold that section 668.4 would apply to such cases but that the definition necessarily incorporated in it would not, would make no sense, and we do not attribute such an intent to the legislature. *See* Iowa Code § 4.4(3) (presumption that reasonable result of statute intended); *Welp,* 333 N.W.2d at 483 (manifest intent of legislature will prevail over literal import of words used); *Iowa National Industrial Loan Co. v. Iowa Department of Revenue,* 224 N.W.2d 437, 440 (Iowa 1974) (same).

The Uniform Comparative Fault Act provides only for apportionment of the damages among "parties." As used in the uniform act, a "party" includes third-party defendants and certain persons who have been released, but it does not include unidentified persons. *See* Uniform Comparative Fault Act § 2, 12 U.L.A. 46 (1985 Supp.). The comments by the commissioners expand on the reasons:

> [L]imitation to the parties to the action means ignoring other persons who may have been at fault with regard to the particular injury but who have not been joined as parties. This is a deliberate decision. It cannot be told with certainty whether that person was actually at fault or what fault should be attributed to him, or whether he will ever be sued, or whether the statute of limitations will run on him, etc. An attempt to settle these matters in a suit to which he is not a party would not be binding on him. Both plaintiffs and defendants will have significant incentive for joining available defendants who may be liable. The more parties joined whose fault contributed to the injury, the smaller the percentage of fault allotted to each of the other parties, whether plaintiff or the defendant.

*Id.*

■ The trial court was correct in ruling that the negligence of unidentified parties could not be considered in assessing percentages of liability. Intervening acts of unidentified persons may, of course, still be considered on the issue of proximate cause.

We find no basis for reversal.

AFFIRMED.

All Justices concur except UHLENHOPP and CARTER, JJ., who dissent from Division IB.

UHLENHOPP, Justice (concurring in part, dissenting in part).

I concur in the court's opinion except for division I-B and the result, from which I dissent. The Plaehn estate was dismissed out of the case on January 1, 1982. Defendants did not file their third-party petition against that estate until June 25, 1984, some seventeen months later. During the time the Plaehn estate was originally a party to the litigation I think peculiar circumstances existed under section 633.410 of the Iowa Code. But when the Plaehn estate was dismissed from the case, I think that defendants had to bring the estate back into the case within a reasonable time. I do not think that peculiar circumstances, which excuse failure to file within six (now four) months, excuse failure to file for an unreasonable additional time. In my opinion, the hiatus of seventeen months in this

case was too long. I would hold that the third-party petition was filed too late.

CARTER, J., joins in this concurrence in part and dissent in part.